Guth vs. Lubach.

Guth, Respondent, vs. Lubach, Appellant.

*November 16 — December 4, 1888.*

| 73  131 |
| 103  397 |

*(1, 2) Practice: Frivolous demurrer: Motion for judgment: Order to strike out: Costs as condition of answering. (3) Slander: Meaning of words: " Use."*

1. A motion for judgment on the pleadings on the ground that a demurrer is frivolous is, in substance and legal effect, a motion to strike out the demurrer.
2. Under sec. 2681, R. S., upon striking out a frivolous demurrer, the court may make the payment of costs a condition of the privilege of pleading over, although costs were not asked for in the notice of the motion to strike out.
3. The words, " My father-in-law [the plaintiff] has *used* my wife for eleven years. The children are not mine; they are from him," are capable of the meaning, ascribed to them in innuendoes, that the plaintiff had been guilty of the crimes of incest and adultery.

APPEAL from the Circuit Court for *Washington* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

This is an action of slander. The amended complaint contains two counts, in each of which it is alleged, in effect, that the plaintiff is fifty-five years of age, and has been married to and lived with his present wife at Kewaskum, Wisconsin, ever since January 4, 1851; that he and his said wife have had sixteen children, six of whom are dead, including one daughter named Lizzie who was born February 5, 1853, and died October 6, 1870; that they have ten children still living, including Nicholas Guth, Jr., hereinafter mentioned, and Katherine, who was born September 6, 1856, and who, several years ago, was married to and is now the wife of the defendant; that said Katherine has several children still living as the fruit of her marriage with the defendant; that November 7, 1887, at said Kewaskum, the defendant falsely and maliciously spoke and published of and concerning the plaintiff, in the presence and hearing of divers good and worthy citizens of this state and neighbors of the plaintiff, who understood the German language and the effect and meaning of said words, the false, malicious, and defamatory words in the German language (which are given in German, with appropriate innuendoes), and a correct, literal, and exact translation into English is therein alleged, with a repetition of such innuendoes, as follows, to wit: "My father-in-law [the said plaintiff meaning] has used my wife [the defendant's wife and daughter of said plaintiff meaning] for eleven years [thereby meaning that said plaintiff had been guilty of the crimes of incest and adultery with said defendant's wife, who is a daughter of said plaintiff, as aforesaid meaning]. The children [the said defendant's said children meaning] are not mine [the said defendant's meaning]; they [the said defendant's children meaning] are from him [the said plaintiff meaning]." There

are also the usual allegations to the effect that said words were understood by the persons in whose presence and hearing they were spoken, as charging the plaintiff with being guilty of the crimes of incest and adultery with the defendant's said wife.

The second count substantially repeats the facts above mentioned, and also alleges, in effect, that November 7, 1887, at said Kewaskum, the defendant, in a certain other discourse, then and there had with said Nicholas Guth, Jr., son of the plaintiff, in the presence and hearing of said Nicholas Guth, Jr., and other good and worthy citizens and neighbors of the plaintiff, falsely and maliciously spoke of and concerning the plaintiff the false, malicious, scandalous, and defamatory words, which, with innuendoes, were alleged therein to be as follows, to wit: "*Your father* [the said plaintiff meaning] *has been using my wife* [the said defendant's wife aforesaid meaning] *for the last eleven years* [thereby meaning that said plaintiff had been guilty of the crimes of incest and adultery with the said wife of said defendant, who is a daughter of said plaintiff, as aforesaid meaning]. Your *sister that has been dead so many years* [meaning the plaintiff's daughter Lizzie, who died as aforesaid], *your father* [the plaintiff meaning] used her [the said daughter meaning] *from the time she* [the said plaintiff's daughter meaning] was eleven years old until the time of her [the said plaintiff's daughter Lizzie meaning] death [thereby meaning that said plaintiff had been guilty of the crime of incest with said daughter, the said Lizzie, now dead]." That said words were understood by the said Nicholas, Jr., and others, as charging the plaintiff to have been guilty of the crimes of incest and adultery with the defendant's wife, and incest with said Lizzie during her life. The complaint prayed $10,000 damages, and costs.

The defendant demurred to each of said counts separately, on the ground that the same did not state facts sufficient to

constitute a cause of action.    Thereupon the plaintiff moved the court for judgment on the pleadings in the action, on the ground that said demurrer to said complaint was frivolous.    Upon the hearing of that motion, it was, in effect, ordered by the court that the demurrer be, and the same was thereby, overruled and stricken out as frivolous, and that the plaintiff have judgment against the defendant as demanded in the complaint, but with leave to the defendant to answer within twenty days, on payment of $10 costs to the plaintiff and the clerk's fees.    From that order the defendant appeals.

The cause was submitted for the appellant on the brief of *Barney & Kuechenmeister*, and for the respondent on that of *Paul A. Weil*.

For the appellant it was contended, *inter alia*, that under sec. 2681, R. S., a motion for judgment on account of the alleged frivolousness of a demurrer was not proper without a previous motion to strike out the demurrer; and upon the hearing of such motion it was an irregularity to enter an order striking out the demurrer.    Under the same statute in New York it has been held to be error to allow costs upon a motion when not prayed for in the notice of motion.    4 Wait's Pr. 596; *Northrop v. Van Dusen*, 5 How. Pr. 134; *Saratoga & W. R. Co. v. McCoy*, 9 How. Pr. 341. Words in themselves not actionable cannot be rendered so by an innuendo, without a prefatory averment of extrinsic facts which made them slanderous.    The innuendo cannot aver a fact or change the natural meaning of words. *Frank v. Dunning*, 38 Wis. 270, 273; *Weil v. Schmidt*, 28 id. 137, 140; *Hayes v. Mitchell*, 7 Blackf. 117; *Miles v. Vanhorn*, 17 Ind. 245, 79 Am. Dec. 477.    Language alleged to have been spoken, and unmodified by a statement of extrinsic facts, will be interpreted in its ordinary sense as it would be usually understood by the hearers.    Townshend on Slander, secs. 133, 142; 1 Starkie on Slander, 44.    See,

also, *Holt v. Scholefield*, 6 Term, 691; *Patterson v. Edwards*, 7 Ill. 720; *Brown v. Brown*, 14 Me. 317; *Foster v. Browning*, Cro. Jac. 688, pl. 2; *Johnson v. Hedge*, 6 U. C. Q. B. 337; *McCuen v. Ludlum*, 17 N. J. Law, 12; *Hillhouse v. Peck*, 2 Stew. & P. (Ala.), 395. There is no statement, except the innuendo, that the word " used " was employed by the defendant in any other than its natural sense.

CASSODAY, J. If a demurrer be frivolous, the court, or the presiding judge thereof, may, upon motion, strike out such pleading, and thereupon either order judgment in favor of the adverse party or in his discretion allow the party interposing the same to plead over within a limited time on such terms as may be just. Sec. 2681, R. S.; subd. 20, sec. 2, ch. 194, Laws of 1879. We are clearly of the opinion that the motion for judgment on the ground that the demurrer was frivolous, was in substance and legal effect a motion to strike out the demurrer. This is the logic of the rule long since adopted by this court, to the effect that an order to strike out a demurrer, with leave to plead over on the usual terms, is, in substance, an order overruling the demurrer, and hence would not be reversed unless the demurrer was in fact well taken. *Hoffman v. Wheelock*, 62 Wis. 435; *Straka v. Lander*, 60 Wis. 115; *Lerdall v. Charter Oak L. Ins. Co.* 51 Wis. 430. Manifestly it was so regarded by the learned trial judge. Hence the order *overruling* the demurrer, as well as striking it out.

Complaint is made because the order allows costs upon the motion when none were asked in the notice of motion. But we do not understand the order as imposing costs upon the defendant. In the exercise of the discretion vested in the trial judge by the statute cited, he simply gave the defendant the privilege of answering within the time named upon the payment of such costs and fees. The statute cited authorizes the granting of such privilege " on such terms as

may be just." Of course he was not bound to so answer, and hence not bound to pay such costs. He was only bound to pay in case he availed himself of the privilege thereby granted.

The principal question for determination is whether the words alleged to have been spoken in the respective counts are capable of indicating the criminal conduct charged. Undoubtedly such words are to be construed in the plain and popular sense in which they were naturally understood by those who heard them. *Campbell v. Campbell*, 54 Wis. 90; *Bradley v. Cramer*, 59 Wis. 309; *Ellsworth v. Hayes*, 71 Wis. 434. We agree with counsel to the effect that it is not the office of an innuendo to enlarge the meaning of the alleged slanderous words, but merely to point out their application to the facts previously alleged. *Ibid.* It is for the court to determine whether the words employed are capable of the meaning ascribed to them by the innuendoes, and for the jury to determine whether such meaning is truly ascribed to them. *Ibid.* It is contended by the counsel for the defendant that the language employed, charging the plaintiff with having "used" the defendant's wife, were incapable of the criminal meaning ascribed to them in the innuendoes and charged in the complaint; and that no such meaning or definition can be found anywhere. The learned counsel seems to have momentarily forgotten such use of the word in the enumeration of particular sins by Paul, where he speaks of the change of "the natural *use* into that which is against nature;" and, again, of "the men leaving the natural *use*," etc. Romans, ch. 1, verses 26, 27. Besides, the language alleged in the first count to have been employed is fairly capable of meaning, as stated in the innuendoes, that the defendant disclaimed the paternity of the children which were ostensibly his, and asserted that they were from the plaintiff. We are forced to conclude that the words alleged to have been employed in

the respective counts are capable of the criminal meaning ascribed to them by the innuendoes.

*By the Court.*— The order of the circuit court is affirmed.