FILED
United States Court of Appeals
Tenth Circuit

**July 13, 2010**

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

ALI MEHDIPOUR,

     Plaintiff-Appellant,

v.

JAMES S. MATTHEWS, JR., an
Oklahoma attorney in Oklahoma County;
NANCY L. COATS and BARBARA
SWINTON, Oklahoma County District
Court Judges, individually and in their
official capacities,

     Defendants-Appellees.

No. 10-6073

(D.C. No. CV-09–01060-C)
(W. D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE,** Chief Judge, **TACHA,** and **O'BRIEN**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination of this

appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is, therefore,

submitted without oral argument.

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Plaintiff-Appellant Ali Mehdipour, appearing *pro se*, appeals the district court's dismissal of the 42 U.S.C. § 1983 civil rights action that he filed against two Oklahoma state trial court judges and against an attorney who previously represented him in a civil matter in Oklahoma state court. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we AFFIRM.

## I

Although this federal action presents a series of straightforward inquiries, it is born of a tangled state court history. In the interest of brevity, we recite only those portions of the background which are necessary to our holding.

In November of 1993, Ali Mehdipour brought an action in Oklahoma state court seeking specific performance of a real estate purchase contract he had entered into with Kenneth Holland. This litigation took nearly a decade to wind its way through the Oklahoma courts, but after two trials and two appeals, final judgment was finally entered in Mehdipour's favor in the spring of 2001.[1] The judgment which was awarded to Mehdipour included not only specific performance of the real estate purchase contract, but also money damages in the amount of the fair rental value of the property from the time Mehdipour should have been given possession.

During the course of this litigation, Mehdipour was represented by a series of attorneys and at times, even appeared *pro se*. One of the attorneys who worked on

---

[1] By the time judgment was entered, Holland had already sold the real property in question to another purchaser. Accordingly, the judgment awarded to Mehdipour referenced both Holland and this subsequent purchaser, Star Metals Company.

Mehdipour's behalf was James S. Matthews, Jr. In November of 1998, after he was no longer Mehdipour's attorney of record, Matthews filed a "Notice of Attorney Lien" in Oklahoma state district court, alleging that Mehdipour owed him $17,642.37 in unpaid attorney's fees.[2] In response to Matthews filing, in August of 2000, Oklahoma state district court judge, Judge Nancy L. Coats, entered an order which provided, in relevant part, as follows:

> [A] lien is imposed and recognized in favor of [] Matthews and against the judgment and claim of Mehdipour in [the specific performance] action, for attorney fees and reimbursement of expenses advanced, due and owing by [] Mehdipour to [] Matthews in the amount of $17,642.37, including but not limited to, Mehdipour's Judgment granting specific performance of a real estate purchase contract, as to certain real property.

ROA, Vol. 1, at 45.

Nearly four years later, on June 15, 2004, Matthews successfully initiated execution proceedings which resulted in Mehdipour's judgment against Holland and Star Metals being sold at a sheriff's sale with the proceeds to be applied toward the satisfaction of the attorney's lien Matthews had previously perfected. The sheriff reported that he caused Mehdipour's judgment to be sold to James S. Matthews, the highest bidder at a public auction held on July 8, 2004. Mehdipour subsequently filed a motion to set aside this sheriff's sale. This motion was denied by Oklahoma state district court judge, Judge Barbara G. Swinton. Mehdipour then unsuccessfully moved for

---

[2] Pursuant to Okla. Stat. tit. 5, § 6, an attorney may encumber any judgment he assists his or her client in obtaining, provided that the attorney demonstrates that the client has not paid for legal services rendered in connection with obtaining said judgment.

3

reconsideration of this denial, before finally filing an appeal.

Ultimately, Matthews was able to successfully execute the judgment which he purchased by forcing the sale of certain real property then owned by Holland and/or Star Metals. Though it is unclear from the evidence in the record, it appears that (1) the property that was sold was not the property which was the subject of the real estate purchase agreement between Mehdipour and Holland, and (2) that the proceeds of this sale were to be applied toward the satisfaction of the money damages portion of the judgment Mehdipour had been awarded and which Matthews had subsequently purchased. In light of the fact that Mehdipour was unsuccessful in his attempts to both stay this sale and to have its proceeds held in escrow until the conclusion of his appeal of Matthews' purchase of the judgment, Mehdipour felt compelled to purchase the property at the sheriff's sale for $60,000. Subsequently, Mehdipour did, however, receive an order from the Oklahoma Supreme Court which stayed the distribution of the proceeds during the pendency of the aforementioned appeal.

Eventually, in September of 2007, the Oklahoma Supreme Court set aside the order of Judge Coats which had allowed Matthews to purchase Mehdipour's judgment at a sheriff's sale. See Mehdipour v. Holland, 177 P.3d 544 (Okla. 2007). The court observed that "if [] Mehdipour had been successful in his efforts to execute on his judgment against [Holland and Star Metals] and had obtained proceeds therefrom, [] Matthews could properly have enforced his $17,642.37 lien on the judgment against that recovery." Id. at 550 (emphasis omitted). The court went on to note, however, that

4

"because [] Matthews was not a party to that action and the judgment belonged only to [] Mehdipour ," "[t]he trial court had no power to issue execution on [] Mehdipour's judgment on application of [] Matthews." Id. In essence, the court held that there was nothing improper about Matthews' imposition of a lien on Mehdipour's judgment, but, that due to the nature of that lien, Matthews could only enforce it against the judgment's proceeds and not the judgment itself. See id. at 548-51; see also Okla. Stat. tit. 5, § 6.

On September 25, 2009, exactly two years after the Oklahoma Supreme Court issued its opinion in Mehdipour v. Holland, Mehdipour filed a complaint in the United States District Court for the Western District of Oklahoma, naming Matthews, Judge Coats, and Judge Swinton as defendants, and purportedly seeking money damages pursuant to 42 U.S.C. § 1983 and Fed. R. Civ. P. 3. As amended, Mehdipour's complaint alleged: (1) that Judges Coats and Swinton, acting under color of state law, "deprived [Mehdipour] of property rights of ownership under [the] first[,] fourth, fifth and fourteenth amendment[s] of [the] United States Constitution," ROA, Vol. 1, at 32, and (2) that Matthews' use of the judicial system in order to purchase Mehdipour's judgment constituted a fraud against Mehdipour which resulted in damages in excess of $50,000.

After Mehdipour filed motions for summary judgment against each of the defendants, the district court issued a *sua sponte* order dismissing each of the three claims raised in Mehdipour's amended complaint. The district court dismissed the claims Mehdipour raised against Judges Coats and Swinton with prejudice, concluding that they are barred by judicial immunity and/or by the Rooker-Feldman doctrine. Meanwhile, the

5

district court dismissed Mehdipour's claim against Matthews without prejudice, concluding that it lacked subject matter jurisdiction to hear the claim due to the fact that Matthews' complained of conduct was not that of a "state actor" for purposes of § 1983.[3]

After subsequently seeking, unsuccessfully, to disqualify the district court judge and to vacate her order dismissing his claims, Mehdipour filed this timely appeal. Construing his *pro se* pleadings liberally as we are required to do, see Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991), Mehdipour alleges that the district court erred in each of its dismissal rulings.

## II

"We review *de novo* a district court's conclusion on the question of absolute immunity." Gagan v. Norton, 35 F.3d 1473, 1475 (10th Cir. 1994). Likewise, "[w]e review a district court's dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) de novo." Kane County Utah v. Salazar, 562 F.3d 1077, 1085 (10th Cir.

_____

[3] Neither Mehdipour's amended complaint, nor the district court's order identifies the purported basis for the district court's jurisdiction to hear this claim. This is notable because as we have explained in a previous, unpublished decision, a plaintiff's failure to properly allege a "state action" in a § 1983 complaint strips the district court of subject matter jurisdiction only if jurisdiction is alleged under 28 U.S.C. § 1343(3). See Elliot v. Chrysler Fin., 149 F. App'x 766, 768-69 (10th Cir. 2005); see also Monks v. Hetherington, 573 F.2d 1164, 1167 (10th Cir. 1978) ("There is no demonstration of state action and, therefore, no basis for civil rights jurisdiction [pursuant to 28 U.S.C. § 1343(3)] in the case at bar."). If, however, jurisdiction is alleged under 28 U.S.C. § 1331, the failure to properly allege a "state action" warrants dismissal pursuant to Fed. R. Civ. P. 12(b)(6), rather than pursuant to Fed. R. Civ. P. 12(b)(1). See Elliot, 149 F. App'x at 768-69; see also West v. Atkins, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff . . . must show that the alleged deprivation was committed by a person acting under color of state law.").

2009) (quotation and citation omitted).

As an initial matter, despite the fact that the Oklahoma Supreme Court reversed the order issued by Judge Swinton which denied Mehdipour's motion to set aside the sheriff's sale of the judgment against Holland and Star Metals, the district court was correct to conclude that the § 1983 claims which Mehdipour seeks to assert against Judges Coats and Swinton are barred by judicial immunity. See Hunt v. Bennett, 17 F.3d 1263, 1266 (10th Cir. 1994) ("[A] state judge is absolutely immune from § 1983 liability except when the judge acts in the clear absence of all jurisdiction." (quotation and citation omitted)); see also Mierles v. Waco, 502 U.S. 9, 12-13 (1991) (per curiam) ("If judicial immunity means anything, it means that a judge will not be deprived of immunity because the action he took was in error or was in excess of his authority." (quotation, citation and alteration omitted)). Accordingly, these claims were properly dismissed and thus, we need not address the potential applicability of the Rooker-Feldman doctrine to them.

The district court's dismissal of Mehdipour's § 1983 claim against Matthews, however, raises a more interesting question. As previously noted, the district court based its dismissal of this claim on its conclusion "that a private attorney is not a 'state actor' for § 1983 purposes." ROA, Vol. 1, at 125 (citing Beedle v. Wilson, 422 F.3d 1059, 1073 (10th Cir. 2005) ("The conduct of an attorney acting in his professional capacity while representing his client does not constitute action under color of state law for the purposes of § 1983.") (quotation and citation omitted)). As the facts of the instant case make clear,

7

however, Matthews was not acting in a professional, representative capacity at the time he initiated execution proceedings against the judgment that had been awarded to Mehdipour.  Rather, he was pursuing his own claim and acting in an individual capacity.

To determine whether the conduct of a private person constitutes "state action" for the purposes of § 1983, the Supreme Court has established the following two-part test:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible. . . .  Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

See Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).

In the instant case, there can be no question that the deprivation of which Mehdipour complains was caused by the exercise of a right created by the state of Oklahoma.  Thus, the critical inquiry is whether, in causing this alleged deprivation, Matthews may be fairly said to have been a state actor.

As the Supreme Court has consistently cautioned, "no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient . . . ."  Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001).  Accordingly, the Court "has taken a flexible approach to the state action doctrine, applying a variety of tests to the facts of each case," Gallagher v. "Neil Young Freedom Concert", 49 F.3d 1442, 1447 (10th Cir. 1995), including (1) the public function test, (2) the nexus test, (3) the symbiotic relationship test

8

and (4) the joint action test, see Johnson v. Rodrigues, 293 F.3d 1196, 1202-03 (10th Cir. 2002) (outlining each of the parameters of each of these tests). Ultimately, however, the Court has noted that when tasked with resolving such an inquiry, "examples may be the best teachers . . . ." Brentwood Acad., 531 U.S. at 297. And to that end, we are persuaded that the Court's holding in Lugar answers the question presented in the instant case.

In Lugar, a debtor sued his creditor alleging, *inter alia*, that the creditor's prejudgment attachment of the debtor's property, which was, pursuant to a Virginia statutory scheme, executed *ex parte*, deprived the debtor of his property rights without due process of law. See 457 U.S. at 924-25. The debtor's complaint alleged two separate causes of action under § 1983. Id. at 940. In the first, the debtor challenged the Virginia statutory scheme pursuant to which the creditor had obtained prejudgment attachment, arguing that it was violative of the Fourteenth Amendment. Id. at 940-41. In the second, the debtor argued that the creditor's misuse and/or abuse of this statutory scheme constituted a violation of the Fourteenth Amendment which was undertaken under the color of state law. Id. at 940-42.

Ultimately, the Court held that only the former of these allegations was actionable under § 1983. In concluding that the debtor's second § 1983 count was not actionable, the Court noted that "private misuse of a state statute does not describe conduct that can be attributed to the State . . . ." Id. at 941; see also Revis v. Meldrum, 489 F.3d 273, 291 (6th Cir. 2007) (noting that the plaintiff's "claim that the private-party defendants applied

9

for the writs [of execution] maliciously or without cause–such as by overstating the judgment amount owed–does not give rise to state action").

The § 1983 claim which Mehdipour seeks to pursue against Matthews closely tracks the second of the § 1983 causes of action brought by the debtor in Lugar. Indeed, rather than challenge any portion of the Oklahoma statutory scheme utilized by Matthews, Mehdipour's claim does nothing more than suggest that Matthews misused and/or abused the statutory scheme. See Amended Complaint, ROA, Vol. 1, at 35 ("Plaintiff further state[s] a[] claim of damages against James S. Matth[e]ws, Jr., a private citizen for perpetrat[ing] a fraud."). Accordingly, Mehdipour's amended complaint fails to allege facts adequate to establish subject matter jurisdiction pursuant to 28 U.S.C. § 1343(3). Monks, 573 F.2d at 1167; Elliot, 149 F. App'x at 768-69. And further, to the extent that subject matter jurisdiction can be found pursuant to 28 U.S.C. § 1331, Mehdipour's amended complaint fails to state a claim upon which relief could be granted and thus, the claim against Matthews would be properly dismissed pursuant to Fed. R. Civ. P. 12(b)(6). See West, 487 U.S. at 48; Elliot, 149 F. App'x at 768-69.

## III

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Chief Judge

10